WILLIAM H. SMITH *vs.* MAINE CENTRAL RAILROAD COMPANY.

Oxford.   Opinion March 10, 1916.

*Assumption of Risk.     Liability of Master to Invitee or Licensee.*
*Revised Statutes, Chapter 84, Section 146.*

Plaintiff arranged to ship cattle over defendant's railroad.   After starting to drive them to the station, he learned no car was ready, but there would be one the next morning.   On plaintiff's asking where he could put them, defendant's agent said he might use the yard at the station.   Plaintiff, without informing the railroad agent and without feeding the cattle, put them in a yard properly fenced, but failed to put up all the gate bars and left no one to guard the cattle.   The cattle broke through the gate during the night and some were killed by the defendant's train.   One ox was in the possession of the plaintiff for the purpose of selling on commission.

*Held:*

1.  That plaintiff, being a mere invitee, defendant was under no obligation to guard the cattle and was guilty of no negligence.

2.  One who takes charge of an animal for sale on commission has such a special property therein that he may sue a railroad for the killing of the animal, where, before suit, he has paid the owner its value.

Action on the case to recover damages for injury to certain cattle in the possession of plaintiff.   Defendant pleaded general issue and brief statement alleging negligence on the part of plaintiff.   Verdict for plaintiff.   Exceptions filed to certain rulings of Justice presiding, and also general motion for new trial.   Exceptions overruled.   Motion sustained.   New trial granted.

Case stated in opinion.

*James S. Wright,* for plaintiff.

*Bisbee & Parker, and White & Carter,* for defendant.

SITTING:   SAVAGE, C. J., KING, BIRD, HALEY, HANSON, JJ.

HALEY, J.   This is an action brought by the plaintiff to recover damages for the killing of and injury to cattle that the plaintiff

was intending to ship at Fryeburg over the railroad of the defendant.

Among the cattle which were injured and sued for was an ox that the plaintiff admitted in his testimony he had not actually purchased at the time the right of action accrued, and he had no written bill of sale of the ox, filed no written assignment of the claim of the real owner of the ox with his writ, and never had an assignment of the owner's claim of the ox, but had taken the ox from the owner with his consent to ship and sell and afterwards settle with the owner, and before the suit was brought did settle with the owner.

The defendant's counsel objected to receiving any testimony in regard to the value of the ox because the plaintiff did not own the ox and had no written assignment of the owner's claim, stating that if there was a cause of action the plaintiff could not maintain it because it was a chose in action, and necessary under chapter 84, section 146, R. S., that the assignment should be in writing, and a copy thereof filed with the writ. The evidence was admitted subject to exception.

The verdict was for the plaintiff, and the defendant brings the case to this court upon the above exception and a motion for a new trial.

The evidence shows that in November, 1913, the plaintiff drove twentyone head of cattle to the railroad station at Fryeburg. He had previously telephoned to the station agent at Fryeburg and engaged a car to take the cattle to Auburn the next Monday or Tuesday. The seventeenth day of November, about eleven o'clock in the forenoon, the plaintiff started with the cattle from Fryeburg Center to drive them to the station in Fryeburg, a distance of some twelve miles. Before he arrived at Fryeburg he telephoned to the station agent to see if a car was there to load the cattle in, and was informed that there was no car, but that he could get one at nine o'clock the next morning, and to the plaintiff's inquiry of what he should do with the cattle the agent replied, "We can put them in the yard." The plaintiff drove the cattle to the station and put them in the yard owned by the defendant that was used as temporary quarters for cattle, which was 32 x 38 feet, boarded tight

except one place where there were bars 10 feet and 5 inches in length. The plaintiff testified that he put up four bars, that it was dark and he saw no other bar. The evidence shows that there were five bars, one at least and possibly two laid upon the ground and not used by the plaintiff. After waiting around about half an hour, without notifying any servant of the defendant that he had placed the cattle in the yard and without having fed them, the plaintiff and his men left for the night. Some time during the night the cattle broke through the bars and wandered down the railroad track and some were killed by a locomotive hauling a train upon the track.

EXCEPTION. The plaintiff had a special interest in the ox; having received him to sell upon commission he had such a property in it, especially after he had paid his consignor, as he had when this action was brought, that he could maintain an action if the defendant was liable. *Moran* v. *Portland Packet Co.*, 35 Maine, 55.

MOTION. The defendant was under no obligation to furnish the plaintiff a place to yard his cattle  A servant of the defendant informed the plaintiff that he could use the yard. It was no part of the duty of the defendant to see that the cattle remained in the yard. The evidence clearly shows that the yard was well fenced and properly equipped with bars, some of which the plaintiff failed to use. This action is based upon the alleged neglect of duty and carelessness in the performance of its duty by the defendant. The strongest that it can be put is that the plaintiff in the use of the yard was an invitee of the defendant; as such the defendant owed him no duty to guard the cattle. *Moore* v. *Stetson*, 96 Maine, 203; *Austin* v. *Baker*, 112 Maine, 268. The only claimed defect in the yard is that the bars did not restrain the cattle. There was no guaranty upon the part of the defendant that they would. The plaintiff knew as much or more than any of the servants of the defendant as to the condition of the bars. He assisted in putting them up after the cattle were driven in. They were made of two boards each seven-eighths to an inch thick, nailed together so that the bar extended from one post to the other, about six inches in width and some two inches in thickness, and if the plaintiff saw fit to accept the invitation to place his cattle in the yard protected

by such bars, with full knowledge of their condition, he assumed the risk of their breaking through the bars and escaping. No act of negligence is shown on the part of the defendant. It was not even informed that the plaintiff's cattle were in the yard. Upon the other hand, the plaintiff knew all about the condition of the bars, and saw fit to leave twentyone head of restive cattle, unfed and hungry, in a strange yard, when an ordinary prudent man must have known that they would endeavor to obtain food by the breaking of the bars if necessary, and due care upon his part required that he, or some of his men, should have remained in charge and fed them, and the defendant was not guilty of neglect or carelessness in not having some one on guard when it had not been notified that the cattle were in the yard, even if it would have been liable, which it was not, for their safety after the plaintiff yarded them in the yard that had no defects not known to the plaintiff.

*Exceptions overruled.*

*Motion sustained. New trial granted.*